## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOSIAH COMPTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 10-632-GPM |
| | ) | |
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 04-30139-GPM |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

On November 18, 2004, Petitioner Compton was charged in four counts of a fourteen-count Indictment. *United States v. Farmer et al.,* No. 04-cr-30139-14, Doc. 1. Count 1 of the Indictment alleged that from 1994 to 2004, Mr. Compton and others conspired to distribute and possess with intent to distribute five kilograms or more of cocaine and cocaine base (crack cocaine), and 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. *Id.* Count 12 of the Indictment charged Mr. Compton with possessing with intent to distribute approximately 307.5 grams of a mixture or substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.* Count 13 of the Indictment charged Mr. Compton with possessing with intent to distribute approximately 10.8 grams of cocaine base (crack cocaine) in violation of §§ 841(a)(1) and (b)(1)(B), and Count 14 charged Mr. Compton with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). *Id.*

The case was initially set before United States District Judge William D. Stiehl of the Southern District of Illinois. On January 18, 2007, Judge Stiehl filed an Order of Recusal,

reassigning the case to the undersigned judge (Doc. 607). Mr. Compton was tried by a jury on March 6, 2007 (Docs. 674-75). On March 15, the jury returned guilty verdicts on Counts 12, 13 and 14 of the Indictment (Docs. 704-06). Mr. Compton was found not guilty of the conspiracy charge alleged in Count 1 of the Indictment (Doc. 700).

On June 25, 2007, Mr. Compton was sentenced to 360 months imprisonment on Counts 12 and 13, and 120 months on Count 14, the terms to run concurrently (Docs. 766, 769). He filed timely notice of appeal (Doc. 774).

On direct appeal, Mr. Compton alleged the District Court improperly considered other uncharged drug amounts as relevant conduct in calculating his sentence and criminal history score. *United States v. Farmer*, 543 F.3d 363, 372 (7th Cir. 2008). He argued the uncharged drug amounts, obtained by the Government from Mr. Compton's proffer, were not a part of the same course of conduct as the offenses of conviction. *Id.* On September 9, 2008, the Seventh Circuit Court of Appeals affirmed Mr. Compton's conviction but vacated his sentence and remanded for resentencing "in light of the improper use of his proffer statements in the PSR, resulting in an incorrect Guidelines range."[1] *Farmer*, 543 F.3d at 378, Doc. 923. Mr. Compton was resentenced on remand to 200 months imprisonment on Counts 12 and 13, and 120 months on Count 14, the sentences to concurrently. (Doc. 946-47). Mr. Compton timely appealed his resentencing, (Doc. 949), but the appeal was dismissed by the Seventh Circuit after Mr. Compton's appellate counsel filed an *Anders* brief because there were no nonfrivolous issues for appeal. *United States v. Compton*, 347 Fed.Appx.

_____

[1]The District Court was advised on remand not to consider the 197 kilograms of cocaine discovered solely from Mr. Compton's proffer statements as relevant conduct. *Id.* However, the Court was given latitude to consider "various other relevant conduct, as described in greater detail but not accounted for in the PSR's recommendation." *Id.*

234, 235 (7th Cir. 2009), Doc. 995.  Mr. Compton then filed his § 2255 motion.

## ANALYSIS

### I.    Timeliness

Section 2255 motions generally must be filed within a year of the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f).  In the instant case, Mr. Compton was sentenced by the District Court on June 25, 2007 (Doc. 769).  He filed timely notice of appeal (Doc. 774).  On September 9, 2008, Mr. Compton's sentence was affirmed on appeal, but his sentence was vacated and remanded for resentencing. *Farmer*, 543 F.3d at 378.  Mr. Compton was resentenced by the District Court on March 16, 2009 (Doc. 947).  He timely appealed (Doc. 949).  On October 2, 2009, Mr. Compton's sentence was affirmed by the Seventh Circuit, and his appeal was dismissed (Doc. 992).

On August 18, 2010, Mr. Compton filed a hand-written motion requesting production of discovery materials in order to file a § 2255 petition.  *United States v. Josiah Compton*, No. 10-cv-632-GPM, Doc. 1.  The Court issued a Memorandum and Order on October 5, 2010, directing Mr. Compton to file a proper § 2255 motion within 30 days and directing the clerk of the Court to provide Mr. Compton with the form filing for a Section 2255 Motion (Doc. 3).  Mr. Compton then filed a proper § 2255 motion on November 5, 2010 (Doc. 4).[2]  The Court issued an Order on November 30, 2011 permitting Mr. Compton to amend his original petition, (Doc. 15), and Mr. Compton filed his amended § 2255 petition on January 11, 2012 (Doc. 18).  Because the original

---

[2]In a separate filing, *United States v. Josiah Compton*, No. 10-cv-778-GPM, Mr. Compton submitted a separate Section 2255 motion and memorandum in support on October 6, 2010 (Doc. 1-2). Civil case 10-778-GPM was later consolidated with civil case 10-632-GPM by judicial order on February 10, 2011.

petition was filed within a year of the date on which Mr. Compton's judgment of conviction became final, the petition is timely.[3]

## II.    Legal Standard

Relief under Section 2255 is "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). Accordingly, habeas relief under § 2255 is "reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996), *citing Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993). "To succeed on a § 2255 petition a convicted defendant must show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Id.*

### A.    Procedural Default

"A § 2255 motion is 'neither a recapitulation of nor a substitute for a direct appeal.'" *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007), *quoting McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). Therefore, a § 2255 motion cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-Constitutional issues that could have been raised on direct appeal, but were not; and (3) Constitutional issues that were not raised on direct appeal, "unless the section 2255 petitioner demonstrates cause for the procedural

---

[3]On July 16, 2012, Mr. Compton filed a motion to amend his petition pursuant to Federal Rule of Criminal Procedure 15(c), which governs the relation back of amendments. (Doc. 23). In his motion, Mr. Compton seeks to amend and provide factual support for his eighth claim for relief, alleging he erroneously characterized the claim as relating to a *Brady* violation when in fact it relates to his rights under the confrontation clause of the Sixth Amendment. This motion will be addressed under subsection IX, which analyzes Mr. Compton's eighth claim for relief.

default as well as actual prejudice from the failure to appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (*overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)). "A claim that has been procedurally defaulted ordinary may only be raised in a § 2255 proceeding if the defendant demonstrates that he is 'actually innocent,' or that there is 'cause' and actual prejudice." *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008), *cert. denied*, 129 S.Ct. 1637 (2009) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

In his petition, Mr. Compton raises nine claims for relief. The Court will address each claim respectively, combining claims 1 and 4 for logical coherence. With the exception of claims 3 (ineffective assistance of trial counsel) and 9 (ineffective assistance of appellate counsel), Mr. Compton failed to raise the claims set forth in his petition on direct appeal. Therefore, Mr. Compton is procedurally barred from raising them in his petition unless he can demonstrate either that he is "actually innocent," or that there is "cause" for and "actual prejudice" resulting from his failure to raise the claims below. *Torzala*, 545 F.3d at 522. Nowhere in his petition does Mr. Compton allege actual innocence, nor is a claim of actual innocence applicable to the alleged procedural deficiencies challenged by Mr. Compton on Fourth, Fifth and Sixth Amendment grounds. Therefore, for his claims to be considered on the merits, Mr. Compton must establish both cause and prejudice.

The cause and prejudice standard requires not only that a petitioner demonstrate "some objective factor external to the defense" that impeded his efforts to raise the issue earlier, *Coleman v. Thompson*, 501 U.S. 722, 753 (1992), but also that the error alleged "worked to his actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982). *See also Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) ("[Petitioner] must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual*

and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."),
*quoting Frady*, 456 U.S. at 170 (emphasis in original).

### B.    Evidentiary Hearing

"[A] district court need not grant an evidentiary hearing in all § 2255 cases." *Almonacid*, 476
F.3d at 521, *quoting Bruce v. United States*, 256 F.3d 592 (7th Cir. 2001). A § 2255 hearing "is not
required if 'the motion and the files and records of the case conclusively show that the prisoner is
entitled to no relief.'"*Bruce*, 256 F.3d at 597, *quoting* 28 U.S.C. § 2255. "In addition, a hearing is
not necessary if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,'
rather than 'detailed and specific.'"*Id.* , *quoting Machibroda v. United States*, 368 U.S. 487 (1962).
The files and records before this Court conclusively show that Mr. Compton is entitled to no relief.
Accordingly, Mr. Compton is not entitled to a hearing.

### III.    Claims 1 & 4: Defective Search Warrant & Improper Collusion in Obtaining Search Warrant

In his first and fourth claims for relief, Mr. Compton alleges that certain procedural
deficiencies in the acquisition of the search warrant executed at his residence invalidated that
warrant and tainted the evidence subsequently obtained by law enforcement officers.  Mr. Compton
argues not only that the search warrant lacked probable cause, but also that federal and state law
enforcement authorities improperly colluded with one another in an attempt to circumvent Rule 41
of the Federal Rules of Criminal Procedure.

### A.    Background

Mr. Compton filed a Motion to Suppress Evidence in his criminal case on September 22,
2006 (Doc. 580).  At the suppression hearing, DEA Special Agent Michael Rehg testified that in
2004, the DEA learned pursuant to a Title III wire tap investigation that Mr. Compton was a

customer of a large-scale cocaine dealer and shared this information with local law enforcement, MEGSI (Metropolitan Enforcement Group Southern Illinois), on April 7, 2004. (Doc. 597, pp.4-5). That same day, MEGSI operatives were preparing to obtain a search warrant for Mr. Compton's candy shop, Candy Cravers and More Store.  *Id.* at 5.  Special Agent Rehg advised Detective Michael Parkinson of MEGSI that DEA had information there were possibly narcotics at Mr. Compton's store, and that DEA had additionally observed a delivery of narcotics to Mr. Compton's home. *Id.*  Special Agent Rehg advised that he would provide Detective Parkinson with additional probable cause with respect to Mr. Compton's residence. *Id.*  Special Agent Rehg further stated at the time the warrant was prepared and executed DEA did not know if Mr. Compton would be prosecuted federally or by the state, and DEA did not attempt to enlist state officers to execute the warrant on behalf of the federal investigation.  *Id*. at 7.

Detective Parkinson also testified at the suppression hearing and advised that in addition to the information he received from Special Agent Rehg regarding Mr. Compton's drug activity at his residence and candy store, Parkinson had also received information from a known confidential informant who lived in the building above Mr. Compton's candy store.  *Id*. at 12.  The informant advised Parkinson he had been with Mr. Compton the previous night at the candy store where they had counted out a large amount of currency.[4] *Id*.  While there, the informant smelled cocaine cooking through the air vents and observed large amounts of cocaine and currency. *Id* at 13.

---

[4] In his Memorandum and Order following the suppression hearing, Judge Stiehl referenced the warrant affidavit, which specified that the informant had "counted small bills totaling over 70,000" and "weighed and bagged about 16 ounces of crack cocaine"with Mr. Compton. The informant had further advised agents that he had seen a half-pound of marijuana in the store and that Mr. Compton's sister, Celena Compton, sold the marijuana at the store. (Doc. 606, p.5).

Detective Parkinson stated that an affidavit for a search warrant was prepared based on the information received from both Special Agent Rehg and the confidential informant, and search warrants were then obtained from the state court in Madison County, Illinois, and executed simultaneously at Mr. Compton's candy store and residence on Robin Street. *Id.* Like Special Agent Rehg, Detective Parkinson testified that he did not "pre-plan[]" with federal authorities where the case would eventually be presented for prosecution. *Id.* at 16.

In his Order denying Mr. Compton's Motion to Suppress Evidence, Judge Stiehl observed that the warrant affidavit also included several prior incidents involving Mr. Compton supporting probable cause. One incident occurred on September 9, 2003, when Illinois State police went to Defendant's residence at 1302 Robin Street after receiving information from a confidential informant that the residence was a stash house for Mr. Compton. (Doc. 606, p.5). While at the premises, agents observed a bag sitting on the lawn containing approximately one ounce of marijuana and four plastic bags with approximately one ounce of powder cocaine each. *Id.* Agents also observed mail in plain view addressed to Josiah Compton. *Id.* The affidavit additionally included interviews and proffers conducted beginning in 2000 with various individuals who identified Mr. Compton as their source of either cocaine, heroin, and/or marijuana. *Id.* at 6. The final incident set forth in the affidavit detailed a traffic stop in Venice, Illinois on July 17, 2002, where the driver evaded arrest and the car was later found abandoned with a gym bag inside containing a wallet with identification for "Josiah Compton." *Id.* The bag also contained 13 grams of cocaine and 24 bags of marijuana weighing approximately 60 grams. *Id.* Though Mr. Compton alleged to have reported the car stolen prior to the incident, a confidential informant advised MEGSI approximately two weeks later that Mr. Compton had admitted to fleeing the police. *Id.*

B.        Claim 1: Defective Search Warrant

Mr. Compton first alleges the District Court at trial should have suppressed the evidence

obtained pursuant to the search warrant because the warrant affidavit lacked a showing of probable

cause, and the affiant misled the issuing Magistrate regarding the existence of probable cause.(Doc.

18-1, 4-11). Mr. Compton is procedurally barred from raising this claim absent a showing of cause

and prejudice. *Torzala,* 545 F.3d at 522.  Mr. Compton does not set forth any cause to justify his

failure to raise the issue on direct appeal.  Even assuming Mr. Compton could demonstrate cause

for his default, he is unable to establish the warrant affidavit he now challenges lacked a showing

of probable cause, thereby resulting in prejudice to Mr. Compton.

In determining the existence of probable cause, the issuing magistrate must make only "a

practical, common-sense decision whether, given all the circumstances set forth in the affidavit

before him, including the 'veracity' and 'basis of knowledge of persons supplying hearsay

information, there is a fair probability that contraband or evidence of a crime will be found in a

particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Dismuke*, 593

F.3d 582, 586 (7th Cir. 2010), *cert. denied* 131 S.Ct. 3018 (2011)  (magistrate's finding of probable

cause will be upheld if there is a substantial basis for concluding search will uncover evidence of

wrongdoing).  Consequently, "the duty of a reviewing court is simply to ensure that the magistrate

had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39

(quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)) (alterations in original); *see also United*

*States v. McIntire*, 516 F.3d 576, 577 (7th Cir. 2008), *cert. denied* 555 U.S. 839 (2008) ("[W]e have

repeatedly said after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the

form of *de novo* review.  A magistrate's 'determination of probable cause should be paid great

deference by reviewing courts.'"), *quoting Gates*, 462 U.S. at 236).

In the instant case, Judge Stiehl issued an Order denying Mr. Compton's Motion to Suppress Evidence, finding the information supplied in the warrant affidavit sufficiently supported a finding of probable cause. (Doc. 606, p. 7). In so ruling, the District Court observed Seventh Circuit precedent requiring that for a search warrant to be declared invalid, the defendant must show by a preponderance of the evidence that:

> (1) the search warrant affiant committed perjury or acted with reckless disregard by including false statements in the warrant affidavit, and (2) upon the exclusion of those false statements from the search warrant (and inclusion of any omitted material facts) the remaining information is insufficient to establish probable cause.

(Doc. 606, p. 4), *quoting United States v. Taylor*, 471 F.3d 832, 838-39 (7th Cir. 2006), cert. denied, 555 U.S. 1120 (2009), *citing Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). The Court found probable cause existed for the search warrant based not only on information provided by a known confidential informant who "detailed activities with the defendant at the candy store a few days before the warrant was issued," but also on "several incidents over a period of time involving the defendant and drug activities, including sales or distribution that occurred out of the Robin Street residences as well as the candy store."(Doc. 606, p.7). "Clearly," the Court concluded, "there was no 'bad faith' in this case which would warrant suppression of the seized evidence." *Id.*, *quoting United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (suppression is appropriate only if the officer lacked good faith in relying on an invalidated search warrant).

The Seventh Circuit has established that even when an affidavit is insufficient to establish probable cause, "the evidence obtained in the execution of the warrant need not be suppressed if the police relied on the warrant in good faith." *Dismuke*, 593 F.3d at 586, *citing United States v. Leon*, 486 U.S. 897, 920-21 (1984). This "good-faith exception" applies unless an affidavit is "'so lacking

in indicia of probable cause as to render official belief in its existence entirely unreasonable' or the warrant-issuing judge 'wholly abandoned' his neutral role and 'serve[d] merely as a rubber stamp for the police.'" *Id.* at 586, *quoting Leon*, 468 U.S. at 923.  Here, the record is replete with evidence not only that the issuing Magistrate had a substantial basis for issuing search warrants for Mr. Compton's residence and candy store, but also that executing officers relied on the warrant in good faith.

The reasons set forth by Mr. Compton in his § 2255 petition for finding a lack of probable cause address non-material issues.  Mr. Compton alleges the candy store described by the confidential informant and searched by law enforcement did not belong to him,[5] and that he did not reside with his girlfriend at 1302 Robin Street (Doc. 18-1, p.6-7).  He also complains that police failed to include in the affidavit that Mr. Compton reported his vehicle stolen during the alleged traffic incident. *Id.*  Ownership of the candy store or 1302 Robin Street, however, is irrelevant to a finding of probable cause that Mr. Compton engaged in illegal activity at those locations–as is Mr. Compton's claim that police failed to include that he reported his vehicle stolen.  Consequently, Mr. Compton is unable to demonstrate actual prejudice, even assuming cause for his procedural default. His first claim for relief must therefore fail.

## C.    Claim 4: Improper Collusion in Obtaining Search Warrant

In his fourth claim for relief, Mr. Compton alleges federal agents improperly "solicited the assistance of state officers in a deliberate attempt to avoid the requirements of Rule 41 of the Federal

---

[5]Mr. Compton alleges the candy store described by the confidential informant located at 422 Madison Avenue in Madison, Illinois, was not the same as Compton's store, which he alleges is located at 304 Broadway Avenue in Venice, Illinois. (Doc. 18-1, 6). Mr. Compton claims the store described by the informant was "a mile away" from his store. *Id.*

Rules of Criminal Procedure," which prescribes the manner and method for obtaining and executing a federal search warrant. (Doc. 18-1, p.17).

As with his first claim, Mr. Compton must demonstrate cause and prejudice for his claim to be considered on the merits. *Briley*, 401 F.3d at 801 (petitioner may obtain federal habeas relief only upon a showing of cause and prejudice for the default). Mr. Compton does not set forth any cause to justify his failure to raise his claim on direct appeal. Even assuming Mr. Compton could demonstrate cause for his default, he is unable to establish any constitutional deficiency in the procedure by which the search warrant was obtained that resulted in prejudice to Mr. Compton.

In Judge Stiehl's Order denying Mr. Compton's Motion to Suppress Evidence, the Court observed that the warrants executed at Mr. Compton's residence and candy store were "issued by a state court judge, based on an application and a sworn affidavit," and that the "triggering event" for state law enforcement's decision to seek search warrants was the information provided to Detective Parkinson by a confidential informant." (Doc. 606, 4). The Court concluded there was "no violation of Rule 41"because there was "nothing in the record that would support defendant's contention that the state warrant was applied for at the request or on behalf of federal agents,"nor was there "any evidence that there was any attempt by federal agents to use the state court warrant system to avoid federal warrant requirements." *Id*.

The record in ths case is clear that information provided to Detective Parkinson by Special Agent Rehg supplemented the probable cause developed by state officers, and that federal agents never requested state officers to execute a search warrant on their behalf. Moreover, the Seventh Circuit has held that a violation of Rule 41 will rarely result in suppression of evidence. *United States v. Trost*, 152 F.3d 715, 722 (7th Cir. 1998), *cert. denied*, 525 U.S. 1070 (1999) ("In light of

*Leon*, it is difficult to anticipate any violation of Rule 41 short of a defect that also offends the Warrant Clause of the fourth amendment, that would call for suppression." *citing Leon*, 468 U.S. 897 (holding Fourth Amendment exclusionary rule inapplicable to evidence obtained by officers acting in reasonable reliance on search warrant issued by detached and neutral magistrate but ultimately found to be invalid). Because the warrant affidavit established probable cause sufficient for the issuance of a search warrant, Mr. Compton is unable to show prejudice resulting from his failure to raise this claim on direct appeal. Accordingly, Mr. Compton's fourth claim for relief must also fail.

## IV.    Claim 2: Unreasonable Execution of Search Warrant

In his second claim for relief, Mr. Compton alleges law enforcement officers failed to announce their presence prior to entering his residence to execute the search warrant, violating the "Knock and Announce" requirement of 18 U.S.C. § 3109. Section 3109 provides that officers executing a search warrant must announce their "authority and purpose" prior to forcibly entering a residence. 18 U.S.C. § 3109; *see also Wilson v. Arkansas*, 514 U.S. 927 (1995) (knock-and-announce principle forms part of Fourth Amendment reasonableness inquiry); *Leaf v. Shelnutt*, 400 F.3d 1070, 1083 (7th Cir. 2005) (requirement that law enforcement officer announce his presence and authority before opening doors of a dwelling and entering forms part of Fourth Amendment reasonableness inquiry).

The warrant issued for the search of the residence at 1302 Robin Street was a knock-and-announce warrant, as acknowledged by both law enforcement and the District Court (Doc. 606, p.8). At the suppression hearing, Special Agent Parkinson testified that a tactical unit was employed to execute the search warrant at Mr. Compton's home on Robin Street because law enforcement had

received information that Mr. Compton often carried firearms.(Doc. 597, pp.17-18).  Parkinson testified that when officers arrived at the residence they "knocked, gave time for somebody to answer, then entered the residence." *Id.* at 19.  Following the hearing, the District Court concluded there was "simply no evidence in the record to contradict the testimony of Detective Parkinson that the tactical unit which entered the house knocked and gave time for someone inside to answer before breaking in the door." (Doc. 606, p.8).

As with his prior claims, Mr. Compton is entitled to relief only if he establishes cause and prejudice for his default. *See supra Briley*, 401 F.3d at 801.  Mr. Compton does not allege any cause for his failure to raise the claim on direct appeal. Even assuming both cause for Mr. Compton's default *and* a clear knock-and-announce violation by law enforcement in executing the search warrant at his residence, Mr. Compton is still not entitled to relief because evidence obtained pursuant to a knock-and-announce violation is generally admissible at trial.  *See Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (when constitutional violation is  illegal manner of entry, "preliminary misstep" of failure to knock and announce does not affect evidence inevitably discovered by execution of valid search warrant); *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) (violation of knock-and-announce rule does not justify exclusion).  Because the evidence against Mr. Compton would likely have remained admissible at trial, even assuming a knock-and-announce violation, Mr. Compton is unable to demonstrate any prejudice from the District Court's denial of his Motion to Suppress Evidence and his second claim for relief must fail.

## V.    Claim 3: Ineffective Assistance of Trial Counsel

In his third claim for relief, Mr. Compton alleges he was denied effective assistance of counsel in five ways: (1) counsel failed to interview witnesses provided by Mr. Compton; (2)

counsel failed to present witnesses to the jury or subpoena witnesses for trial; (3) counsel failed to compel disclosure of the confidential informant's identity; (4) counsel conceded Mr. Compton's guilt to the jury during closing arguments; and (5) counsel provided no defense. (Doc. 18-1, pp.13-17).

When a § 2255 petition alleges ineffective assistance of counsel, the Court must evaluate the claim under the two-prong Strickland test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007), *cert. denied*, 552 U.S. 1118 (2008), *citing Strickland v. Washington*, 466 U.S. 668, 694 (1984). Mr. Compton bears a "heavy burden" in overcoming the presumption that his counsel rendered reasonably effective assistance. *Walker v. Litscher*, 421 F.3d 549, 558 (7th Cir. 2005), *cert. denied*, 546 U.S. 1121 (2006), *citing Strickland*, 466 U.S. at 687-88. The Court's review of attorney performance is "highly deferential," with the underlying assumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690 (petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy). Under *Strickland*, a petitioner must prove (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance prejudiced the defendant such that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Morgan v. Hardy*, 662 F.3d 790, 802 (7th Cir. 2011), *cert. denied*, 132 S.Ct. 1765 (2012), *quoting Strickland*, 466 U.S. at 694. In order to establish that counsel's performance was deficient, the defendant must show errors so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Atkins v. Zenk*, 667 F.3d 939, 944 (7th Cir. 2012), *quoting Strickland*, 466 U.S. at 687). Mr. Compton's claims against trial counsel,

Mr. Rodney Holmes, may be categorized in three ways: claims regarding witnesses; claims regarding the confidential informant; and claims regarding trial arguments.

### A.    Claims Regarding Witnesses

In his petition, Mr. Compton raises two claims against Mr. Holmes regarding witnesses.  Mr. Compton first alleges counsel failed to interview witnesses whose names were provided to him by Mr. Compton. (Doc. 18-1, p.15-16). Second, Mr. Compton alleges counsel failed to call any witnesses during the suppression hearing or at trial. Id. at 16-17.

Specifically, Mr. Compton alleges that if counsel had located and presented two witness, Sharonda Watkins and Carlos Gambrille, both of whom were present during the execution of the search warrant at Mr. Compton's residence, their testimony "would have called into question [the police officer's] actions." *Id*. at 16.  Mr. Compton also alleges Ms. Watkins would have admitted to ownership of the firearm he was charged with possessing, which would have resulted in an acquittal as to Count 14 of the Indictment charging Mr. Compton with being a felon in possession of a firearm. *Id*.  Finally, Mr. Compton argues Ms. Watkins and another witness, Celena Compton, would have offered testimony that "would have proven that the petitioner was not at the candy store during the time alleged by the informant." *Id*. at 15-16.  Mr. Compton submits that this "would have changed the outcome of trial and the suppression hearing" and made the evidence against him inadmissible. *Id*. at 15.

In his affidavit, Mr. Holmes states that he did interview Mr. Compton's witnesses, but subpoenas were not issued because the witnesses said they were available and would be present for trial. (Doc. 19, Exhibit A, p.2).  Mr. Holmes also explains in his affidavit that he did not call any of the witnesses because "[o]ne of the issues at trial was keeping the proffer statements of defendant

from being admitted," and to call the witnesses would have hindered achievement of that goal. *Id*. Mr. Holmes submits that during trial he spoke with Mr. Compton concerning the damaging content of the proffer statements and the risk of the witnesses testifying to contrary matters, and Mr. Compton was in agreement. *Id*. Mr. Holmes then informed the witnesses, who were present at court, that they would not be called to testify. *Id*.

To prevail on his claims of ineffective assistance, Mr. Compton must identify specific acts or omissions that fell outside the "wide range" of professionally competent assistance. *Strickland*, 466 U.S. at 690. Here, there is no evidence to contradict counsel's statements that he interviewed the witnesses provided by Mr. Compton. To the contrary, counsel is presumed to have exercised sound judgment in refraining from calling witnesses on behalf of the defense. "[M]any trial tactics, like so many other decisions that an attorney must make in the course of representation, [are] a matter of professional judgment." *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002) (alterations in original). The Court "will not second-guess trial tactics that are rationally based." *Id*.; *See also Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client the same way."). Moreover, as this Court previously established, knock-and-announce violations do not warrant automatic suppression of evidence. *See supra Poskon*, 603 F.3d at 364. Thus, Mr. Compton is unable to demonstrate the result of the proceeding would not have been different, as required by *Strickland*. 466 U.S. at 694. Accordingly, both claims fail to satisfy *Strickland's* stringent requirements for ineffective assistance.

### B.    Claims Regarding the Confidential Informant

Mr. Compton also contends trial counsel failed to compel disclosure of the confidential

informant's identity, denying Mr. Compton the opportunity to interview the informant. (Doc. 18-1,

p.17).  In his affidavit, Mr. Holmes states that he challenged the confidential informant's reliability

before the Court as requested by Mr. Compton, and the Court denied the challenge (Doc. 19, Exhibit

A, p.2). Even assuming Mr. Holmes successfully compelled disclosure of the confidential

informant's identity, Mr. Compton is unable to demonstrate that the outcome of his case would

probably have been different.  As previously established, the warrant was based on more than the

confidential informant's statements, and law enforcement relied on the warrant in good faith.  Mr.

Compton's bare, conclusory allegations do not satisfy Strickland's prejudice component. *Farr*, 297

F.3d at 658 ("As we have noted so often, conclusory allegations do not satisfy Strickland's prejudice

component.").

### C.    Claims Regarding Trial Arguments

Mr. Compton also alleges that counsel provided no defense during trial and conceded Mr.

Compton's guilt to the jury during closing arguments with regard to Mr. Compton's possession of

illegal drugs "in a residence he jointly occupied." (Doc. 18-1, 17).  The Seventh Circuit has held that

"if in closing argument counsel acknowledges what the course of the trial has made undeniable-that

on a particular count the evidence of guilt is overwhelming, such an acknowledgment can be a sound

tactic." *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991).  "[W]hen evidence is indeed

overwhelming (and there is no reason to suppose that any juror doubts this) . . . there is an advantage

to be gained by winning the confidence of the jury." *Id*; *see also Rodriguez v. United States*, 286

F.3d 972, 986 (7th Cir. 2002) ("Moreover, as this court has recognized, lawyers may reasonably

acknowledge, as part of a trial strategy, that on a particular count the evidence against their client

is overwhelming.").  The Court "will not second-guess trial tactics that are rationally based," *Farr,*

297 F.3d at 658, and Mr. Compton is therefore unable to demonstrate any prejudice resulting from counsel's statement to the jury during closing argument.

## VI.   Claim 5: Violation of Privilege Against Self-Incrimination

In his fifth claim for relief, Mr. Compton raises three allegations against law enforcement officers and Mr. Compton's own attorney in an attempt to establish his statements to law enforcement were defective under *Miranda* and therefore inadmissible at trial (Doc. 18-1, pp.23-24), *citing Miranda v. Arizona*, 384 U.S. 436 (1966). Mr. Compton first alleges he was not given a "full" and "effective" warning of his *Miranda* rights, and that he did not sign a *Miranda* waiver. *Id*. Second, Mr. Compton alleges law enforcement refused to honor his right to remain silent when Mr. Compton stated that "he did not want to talk about the drugs" and officers continued to question him. *Id*.at 23. Third, Mr. Compton alleges his confession was involuntarily made as the product of "prolonged questioning"and "repeated efforts to wear down his resistance," and also from law enforcement's interference with the attorney-client privilege that "cause[d] Compton's attorney to lure him to an interview interrogation under false pretenses and willful deception." *Id*.

Mr. Compton filed a Motion to Suppress Statements on June 3, 2006 (Doc. 543).  At the evidentiary hearing before Judge Stiehl on August 30, 2006, the Government presented evidence of five separate encounters between Mr. Compton and law enforcement officers (Doc. 568).  The first occurred on April 8, 2004, the day after Mr. Compton was arrested on outstanding warrants unrelated to the search of his residence.  *Id*.at 8.  Detective Parkinson testified he interviewed Mr. Compton at the Madison County Jail in Edwardsville, Illinois, and that the interview ended when Mr. Compton indicated he wished to rest and think about the questioning until the following day. *Id*. at 14-15.  The second and third encounters occurred on April 9, 2004, when agents returned to

speak with Mr. Compton about cooperating with their investigation. *Id.* at 15.  The officers left to attend a meeting but returned later that day. *Id.* at 16-17.  Officer Parkinson testified that on April 9 Mr. Compton informed them he wished to cooperate with their investigation but that he needed more time because "the drug dealers on the street wouldn't trust him right away when he got out of jail." *Id.* at 16.  Mr. Compton's fourth encounter with law enforcement occurred "in a proffer-type situation" on May 7, 2004 in the presence of Mr. Compton's then-counsel, Tom Hildebrand.  *Id.* at 32.  Mr. Compton alleged his attorney was not present this time–only several law enforcement officers who threatened him with indictment.  *Id*. at 36-37.  The fifth encounter occurred on May 4, 2005 when agents from the Illinois State Police and Drug Enforcement Administration met with Mr. Compton in a proffer agreement in the presence of then-appointed counsel, Brian Trentman. *Id*. at 32.

Officers testified that prior to each interrogation, Mr. Compton refused to sign the standard *Miranda* waiver but acknowledged that he understood his rights and agreed to answer their questions. *Id*. at 11-15, 28-29.  The District Court found the testimony of law enforcement officers to be more credible and denied Mr. Compton's Motion to Suppress Statements (Doc. 582).

Mr. Compton failed to raise this claim on direct appeal, so he is procedurally barred from raising it in his petition absent a showing of cause and prejudice. *Briley*, 401 F.3d at 801.  Even assuming cause for his default, Mr. Compton is unable to demonstrate prejudice.

Mr. Compton alleges he was not given a full and effective warning of his *Miranda* rights (Doc. 18-1, p.23).  Although Mr. Compton never signed the standard *Miranda* waiver, this Circuit has held that "a *Miranda* waiver need not be express," and may instead be "inferred from a defendant's understanding of [his] rights coupled with a course of conduct reflecting [his] desire to

give up [his] right to remain silent." *United States v. Smith*, 218 F.3d 777, 781 (7th Cir. 2000), *cert. denied*, 531 U.S. 1021 (2000).  At the evidentiary hearing, agents testified that Mr. Compton claimed to understand his rights and did not seem to be under the influence of any substances that would impair his ability to understand his rights (Doc. 568, pp.11, 27, 29).  Agents further testified there was no undue strain or pressure and they did not make any promises or inducements to Mr. Compton. *Id*. at 11-15, 27-28.

In his Order issued pursuant to the suppression hearing, Judge Stiehl found that Mr. Compton's statements were not inadmissible under *Miranda* (Doc. 582).  Mr. Compton has given this Court no reason to find otherwise.  That finding additionally negates Mr. Compton's third allegation that his statements were made involuntarily as a product of prolonged and repeated questioning.  *Ruvalcaba v. Chandler*, 416 F.3d 555, 561 (7th Cir. 2005), *cert. denied*, 546 U.S. 1101 (2006) (internal quotation marks omitted) ("[T]he voluntariness of a statement is determined by considering whether, in light of the totality of the circumstances, the statement was the product of a rational intellect and free will, or whether it was obtained by the authorities through coercive means."); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (voluntariness determined from totality of circumstances).  Moreover, at no time during questioning did Mr. Compton invoke his right to an attorney or even his right to remain silent.  In each instance, Mr. Compton expressed a willingness to discuss the investigation with law enforcement officers.  Accordingly, Mr. Compton is unable to demonstrate any prejudice resulting from his default, and his fifth claim for relief fails.

## VII.    Claim 6: Violation of Due Process

In his sixth claim for relief, Mr. Compton alleges that in light of his acquittal as to the conspiracy charge in Count I of the Indictment, his conviction for the underlying crime was tainted,

as some of the evidence presented in support of the underlying crime was the same as that presented as proof of the conspiracy charge (Doc.16-1, p.25).  Because Mr. Compton failed to raise this claim on direct appeal, he is procedurally barred from raising it now. *Briley*, 401 F.3d at 801.  Even assuming Mr. Compton could demonstrate cause for his default, he is unable to demonstrate prejudice.

Mr. Compton alleges a telephone conversation in which he took part was introduced by the Government at trial and used not only to prove the overt act of the conspiracy, but also as proof of the substantive crime (Doc. 18-1, p.25).  He contends the evidence from the "acquitted conspiracy" was the same evidence used to convict him on additional counts, thereby resulting in a violation of due process. *Id*.  The Supreme Court has made clear, under analogous circumstances,[6] that courts are not to inquire into a jury's deliberations, and "a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them," would be "imprudent and unworkable." *United States v. Powell*, 469 U.S. 57, 66 (1984):

> "[R]espondent argues that the jury could not properly have acquitted her of conspiracy to possess cocaine and possession of cocaine, and still found her guilty of using the telephone to facilitate those offenses . . . For the reasons previously stated, however, there is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled. Respondent is given the benefit of her

---

[6] In *Powell*, Count 1 of the Indictment charged Defendant with conspiracy to possess cocaine with intent to distribute it. The overt acts listed in support of the conspiracy included tapped telephone conversations indicating that Defendant was assisting others in distributing drugs and collecting money for drugs sold. Counts 3-6 charged Defendant with using the telephone in "committing and in causing and facilitating" the alleged conspiracy, and with possession in violation of 21 U.S.C. § 843(b). Count 9 charged Defendant with possession of cocaine with intent to distribute it. The jury acquitted defendant of Counts 1, 6 and 9, but convicted her of Counts 3-5. On appeal, Defendant argued the verdicts were inconsistent and therefore she was entitled to reversal of the telephone facilitation convictions.

> acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted."

*Id.* at 69.   Accordingly, Mr. Compton is entitled to the benefit of his acquittal on Count 1, but it is neither irrational nor illogical that the jury convicted him of the remaining counts. *United States v. Lakich*, 23 F.3d 1203, 1211 (1994) (Each count of indictment treated as a separate indictment; acquittal on one count does not dictate acquittal on any other count); *Powell*, 469 U.S. at 62 (consistency in verdict is unnecessary).  Mr. Compton's sixth claim for relief also fails.

## VIII.   Claim 7: Improper Failure to Disclose Identity of Confidential Informant

In his seventh claim for relief, Mr. Compton alleges the Government improperly withheld the identity of the confidential informant who provided information to law enforcement creating probable cause for the search warrant. (Doc. 18-1, p.26).  Mr. Compton contends the withheld identity prejudiced his ability to adequately prepare a defense at trial. *Id.*

In his petition, Mr. Compton cites *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957), for the proposition that the identity of a confidential informant should be revealed when relevant and helpful to the defense of the accused. (Doc.18-1, p.26).  This Circuit has made clear, however, that disclosure will not be required "when the confidential informant is a mere 'tipster'–someone whose only role was to provide the police with the relevant information that served as the foundation for obtaining a search warrant–rather than a 'transactional witness' who participated in the crime charged against the defendant or witnessed the event in question." *United States v. Harris*, 531 F.3d 507, 515 (7th Cir. 2008), *cert. denied* 555 U.S. 1019 (2008).

Because he failed to raise this claim on direct appeal, Mr. Compton is procedurally barred from raising it now. *Briley*, 401 F.3d at 801.  Even assuming Mr. Compton could demonstrate cause

for his default, he is unable to demonstrate prejudice.

Mr. Compton alleges that because the confidential informant provided law enforcement with information based on his alleged eyewitness account of Mr. Compton's criminal activity, the informant is more than a mere "tipster."  As this Circuit observed in *Harris*, disclosure was required in *Roviaro* because the confidential informant was "the sole participant, other than the defendant, in the transaction charged against the defendant." *Id* at 515, *citing Roviaro*, 353 U.S. at 64. "The informant's testimony was found to be 'highly relevant' because he not only was nearest to the defendant during the alleged criminal transaction, but he also had helped to set up the criminal occurrence and played a prominent part in it." *Id.*, *citing Roviaro*, 353 U.S. at 63-4.  In the instant case, the informant provided law enforcement with information regarding his observations of, rather than organized participation in, Mr. Compton's criminal activities.  At the suppression hearing, Detective Parkinson testified that the confidential informant told him he lived above Mr. Compton's candy store, and on the previous night he had met Mr. Compton at his candy store; observed a large amount of money and cocaine in the store and smelled cocaine cooking through the air vents. Accordingly, the confidential informant was a "mere tipster" rather than a participating "transactional witness." *See id.* ("Because the CI's only role was to provide information that served as the basis for obtaining the search warrant . . . [t]he CI is therefore a 'tipster' whose identity need not be disclosed.").  Accordingly, Mr. Compton's seventh claim also fails.

## IX.    Claim 8: Brady Violation

In his eighth claim for relief, Mr. Compton alleges the Government withheld critical evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  Mr. Compton first alleges, with no factual support, that the Government withheld impeachable or exculpatory police statements that

would have shown he "never possessed nor had access to the gun found at [his] girlfriend's residence." (Doc. 18-1, 27). Mr. Compton next alleges the Government withheld the "proffers" they cited and used in enhancing his sentence, and that he was therefore prevented from challenging the evidence used against him at sentencing. *Id*.

With respect to the first allegation, Mr. Compton does not identify any specific police statements supposedly withheld or offer any additional proof of evidence withheld by the Government. To establish a *Brady* violation, Mr. Compton must establish two things. First, he must demonstrate that "that the government failed to give him evidence favorable to his defense, that would tend to show his innocence, or that could be used to impeach witnesses at trial." *Morgan v. Hardy*, 662 F.3d 790, 800 (7th Cir. 2011), *cert. denied*, 132 S.Ct. 1765 (2012), *citing Brady*, 373 U.S. at 87. Second, Mr. Compton must show "that the evidence suppressed was material; that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.*, *quoting Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008); *See also United States v. Price*, 418 F.3d 771, 785 (7th Cir. 2005), *cert. denied*, 552 U.S. 1048 (2007). Mr. Compton's claim fails as to each requirement because Mr. Compton has failed to identify any police statement supposedly withheld or demonstrate that the outcome of his trial would have been different.

Mr. Compton next alleges the Government withheld "proffers" from cooperators used to enhance his sentence. On July 16, 2012, Mr. Compton filed a Motion Pursuant to Federal Rule of Civil Procedure 15(c) to amend and provide further factual support for his eighth claim for relief as relating back to his original filing. (Doc. 23). *See infra Mayle v. Felix*, 545 U.S. 644 (2005) (establishing right to amend pursuant to Rule 15 when amended claim relates back to date of original

pleading).  The Court will first address Mr. Compton's initial claim for relief, as set forth in his §

2255 motion, and then address his motion to amend.

### A.        Challenged Proffer Statements as Set Forth in Original § 2255 Filing

 The proffers of cooperators challenged by Mr. Compton in his petition were included in the

Presentence Report, which Mr. Compton was given and to which he filed objections on May 29,

2007 (Doc. 735).  Mr. Compton challenged the withheld proffers on direct appeal to the Seventh

Circuit, and his claim was finally determined on the merits.  *Farmer*, 543 F.3d 363 ("We find no

error in the district court's inclusion of the various statements or calculations of uncharged drug

quantities evidenced by the cooperator's statements that increased Compton's relevant conduct

determination.") (*Id*. at 372). Accordingly, Mr. Compton  is procedurally barred from raising this

claim, again, in this petition. *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005), *cert. denied*

546 U.S. 899 (2005) ("[O]nce the [appellate] court has decided the merits of a ground for appeal,

"that decision establishes the law of the case, and is binding on a court asked to decide the same

issue in a later phase of the same case unless there is some good reason for reexamining it.").

On direct appeal, the Seventh Circuit reviewed whether the District Court erred in

considering "uncharged drug quantity based on the various cooperators statements because those

drugs were not part of the same course of conduct charged." *Farmer*, 543 F.3d at 372. In concluding

the District Court did not err, the Seventh Circuit gave "broad discretion to the district court's

explicit determination that the statements were reliable," and "credit[ed] the district court's factual

determinations regarding Compton's relevant conduct. *Id.* at 373.  Mr. Compton is therefore also

procedurally barred from repackaging his claim as a *Brady* violation in this petition. *See People v.*

*United States*, 403 F.3d 844, 846 (7h Cir. 2005), *cert. denied*, 546 U.S. 935 (2005) ("twin goals" of

the law-of-the-case doctrine is "to ensure that the parties marshal all of their facts and arguments so that a dispute may be resolved in one pass, and to conserve judicial resources).  Even if the Court were to find that the law-of-the-case doctrine does not preclude Mr. Compton's claim because the issue raised on direct appeal is different than the issue raised here, Mr. Compton's claim nonetheless fails on the merits as he is unable to demonstrate the Government withheld the proffers, which were included in the Presentence Report.  His eighth claim for relief fails.

### B.      Motion to Amend

In his motion to amend, Mr. Compton alleges his original petition erroneously characterized his eighth claim for relief as a *Brady* violation, rather than as a violation of his rights under the confrontation clause of the Sixth Amendment. *Compton*, No. 10-632, Doc. 23, pp.2-3.  He contends his amended claim arises out of "the same conduct or occurrence set forth in the original pleading, i.e., witness statements used to enhance his sentence," and further "serves to add facts and specificity to the original claim." *Id* at 2.

 "The Civil Rule governing pleading amendments, Federal Rule of Procedure 15, made applicable to habeas proceedings by 2242, Federal Rule of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11, allows pleading amendments with 'leave of court' any time during a proceeding." *Mayle v. Felix*, 545 U.S. 644, 655 (2005).  In a habeas proceeding, amendments made after the statute of limitations has run must "relate back" to the date of the original pleading. *Id*. An amendment will relate back to the date of the original pleading if the original and amended pleadings arise out of the same "conduct, transaction, or occurrence." *Id*., *quoting* Rule 15(c)(2).

In his amended claim, Mr. Compton alleges the Court erred in using "potentially 'unreliable' witness statements" regarding uncharged drug amounts to enhance his sentence. (Doc. 23, p.2).  Mr.

Compton acknowledges that counsel challenged the District Court's computation of the drug amounts at sentencing and also that the District Court advised Mr. Compton it was insufficient to raise a conclusory allegation as to the reliability of the cooperators. *Id.* at 4. Nonetheless, Mr. Compton continues for several pages to challenge the reliability of the out-of-court statements and the weight of the evidence against him. *Id.* at 4-8.

The amended claim is a mere recitation of Mr. Compton's eighth claim for relief, as set forth in his original petition.  It differs from the original claim only in that it has been recharacterized as a violation of Mr. Compton's rights under the confrontation clause and challenged in greater length and detail.  The amended claim fails on the same grounds as the original claim.

## X.     Claim 9: Ineffective Assistance of Appellate Counsel

In his final claim for relief, Mr. Compton alleges he was denied effective assistance of counsel on his first direct appeal due to his lawyer's failure to raise several issues.  He contends counsel's failure to raise the desired issues "prevent[ed] Mr. Compton from presenting issues for discretionary review to the United States Supreme Court." (Doc. 18-1, 31).

In evaluating the effectiveness of appellate counsel, courts "employ the familiar two-pronged test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668." *Suggs, v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). To establish ineffectiveness, Mr. Compton must demonstrate that "his appellate counsel's performance was deficient and that this deficiency prejudiced him." *Id*. Since Mr. Compton alleges his attorney failed to raise viable arguments on appeal, the Court undertakes the following analysis:

> [W]e must first analyze the trial court record to determine whether his appellate attorney, in fact, ignored "significant and obvious' issues." We must then compare each neglected issue to, in this case, the issue actually raised on appeal. Only if an ignored issue is "clearly stronger" than the arguments raised on appeal will the

> attorney's performance be considered constitutionally deficient (thereby satisfying the first prong of the Strickland test). To establish prejudice-the other component of the Strickland test-[Mr. Compton] must show that there is a reasonable probability that, but for the deficient performance of his attorney, the result of the appeal would have been different.

*Id.*  In Mr. Compton's letter to appellate counsel, Ms. Hannah Garst, Mr. Compton requested that Ms. Garst raise on appeal the issues now set forth in his petition for relief, emphasizing in particular the validity of the search warrant executed at his residence.  As the Court's analysis of each of the above-enumerated claims makes clear, Mr. Compton is not entitled to relief on any of the grounds set forth in his petition, each of the claims having failed on the merits.  Petitioner is unable to demonstrate any deficiency in counsel's performance or any prejudice as a result thereof.

Moreover, Ms. Garst effectively argued on direct appeal that the Government had improperly used Mr. Compton's own proffer statements for enhancement purposes in the Presentence Report, thereby resulting in a reduction of Mr. Compton's sentence from 360 months in prison to 200 months in prison.  It is clear from the record that Mr. Compton's appellate counsel did not ignore "significant and obvious" issues, and Mr. Compton has failed to allege a viable argument that is "clearly stronger" than the arguments raised on appeal.  *Suggs*, 513 F.3d at 678.  Accordingly, Mr. Compton's ninth and final claim for relief must also fail.

## CONCLUSION

For the foregoing reasons, Mr. Compton's petition under 28 U.S.C. § 2255 (Doc. 18) is **DENIED**.  His pending motions at Docs. 23, 24, 25, and 26 are subsequently **DENIED.**  This action is **DISMISSED with prejudice**, and the Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: November 13, 2012

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge